UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| WINFRED N. WOLLOR, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:23-CV-306-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| COLLINS AEROSPACE HEADQUARTERS, | ) ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on a Motion to Dismiss by Defendant Collins Aerospace Headquarters.[1] [R. 14]. Following Defendant's motion, *pro se* Plaintiff Winfred N. Wollor tendered a "Motion for court to proceed with case before the jury with prejudice." [R. 15]. Defendant construed Plaintiff's "motion to proceed" as a response to its motion to dismiss and replied accordingly. [R.16]. Long after the time to do so had passed, Plaintiff also filed a purported response to Defendant's motion. [R. 17]. For the reasons that follow, the Court will grant Defendant's motion to dismiss and will deny Plaintiff's "motion to proceed."

**I.   BACKGROUND**

The pertinent facts of this case are straightforward. Plaintiff Winfred Wollor worked as an aircraft inspector for Defendant Collins Aerospace from February 2018 until his employment was terminated on March 17, 2023. [1-1 (Complaint), pp. 3, 7]. Plaintiff was fired for violating

---

[1] The Defendant, in its motion, notes, "The correct name of the legal entity that employed Plaintiff is Goodrich Corporation, which does business as Collins Aerospace." [R. 14, p. 1 n.1]. For clarity, the Court will, throughout this order, refer to the Defendant as Collins Aerospace.

- 1 -

company policy after he made what Collins Aerospace deemed "highly offensive, homophobic comments" to a gay co-worker. [R. 14, p. 1]; [1-1 (Complaint), p. 7]. Specifically, Plaintiff admits that on March 6, 2023, he remarked to the co-worker:

> I said I don't think that people are born gay, I believe people are sexually molested into being gay, I said if only people could report when they are inappropriately touched, once they don't report that incident instantly when it happened, they have given the molester the freedom to keep sexually molesting them and that is how I think people become gay. I said in Africa when a rapist or a gay person is cought [sic] sexually molesting or having sex with a child, the angry crowd of people will bring that person out into the street and they will burn that person alive before the police even arrive, they say they do that as a deterrence to others[.]

[R. 1-1 (Complaint), p. 4]. After the co-worker reported Plaintiff's comments, he was placed on paid leave and an investigation ensued, during which Plaintiff was interviewed and admitted making the statements. [R. 14, p. 2]; [R. 1-1 (Complaint), pp. 6–7]. According to Plaintiff, during the interview, a corporate representative of Collins Aerospace asked Plaintiff, "did you tell [your co-worker] that they burn gay [people] alive in Africa?" to which Plaintiff answered, "no, I didn't say it like that, the way you said it." [R. 1-1 (Complaint), p. 6]. When Plaintiff clarified, in his own words (as block quoted above), his beliefs concerning gay people, Plaintiff claims the representative stated, "you people are the want [sic] that makes gay workers uncomfortable on the job." *Id.* At the conclusion of the investigation into his statements, Plaintiff's employment at Collins Aerospace was terminated. *Id.* at 7.

A tangentially related incident occurred on March 7, 2023, around the same time Plaintiff made the statements that resulted in his termination. Plaintiff alleges a co-worker "insulted" him in front of other co-workers but was not disciplined "because this coworker was a white male." *Id.* at 6, 5. Specifically, Plaintiff explains that after he asked the co-worker to perform a work-related task, the co-worker left the area the two were working together and entered a locker room, and

when Plaintiff entered the locker room later the co-worker swore at Plaintiff and told Plaintiff not to "ask[] him to do anything" because Plaintiff "was not his f..king boss." *Id.* at 5. After Plaintiff reported this incident to a supervisor, the supervisor brought both employees into his office to discuss the incident. *Id.* at 6. However, the supervisor declined to take formal disciplinary action against the co-worker, so Plaintiff, frustrated, "asked to be excused," left the supervisor's office, and went home. *Id.*

Approximately two months after his termination, on May 19, 2023, Plaintiff, acting *pro se*, brought this action in Jefferson Circuit Court, alleging wrongful termination and race discrimination. [R. 1-1 (State Complaint), pp. 2–10]. Invoking this Court's diversity jurisdiction, Defendant timely removed the action. *See* [R. 1]. On July 20, 2023, Defendant moved to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. [R. 14, pp. 1, 5].

## II. STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation

marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

### III. ANALYSIS

As an initial matter, Defendant argues that Plaintiff's Complaint should be dismissed because it does not comport with Rules 8 and 10. [R. 14, p. 4]. Under Rule 8, each asserted cause of action must contain a "short and plain statement of the claim," and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a), (d). Relatedly, Rule 10 requires that a "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Here, Plaintiff's "Complaint" is a five-page, single-paragraph narrative of the events leading up to his termination, some of which are relevant to his termination and others of which are entirely unrelated. *See generally* [R. 1-1, pp. 3–7]. At the outset of his narrative, Plaintiff states he is "seeking for a jury trial against [his] former employer Collins Aerospace. . . for discrimination and wrongful termination." *Id.* at 3.

Of course, courts construe *pro se* filings more leniently than those prepared by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But courts do not have "an affirmative duty . . . to scrutinize *pro se* [pleadings] to determine whether there is a cause of action other than the one pleaded by the [*pro se* litigant] that is more advantageous to him." *Young Bok Song v. Gipson*, 423

F. App'x 506, 510 (6th Cir. 2011). Further, a *pro se* litigant must still comply with court rules and procedural requirements. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Tobias v. State*, No. 18-1892, 2018 WL 8969133, at *1 (6th Cir. Dec. 17, 2018). In this case, it is clear Plaintiff has failed to comply with the basic formatting requirements of Rules 8 and 10 or the substantive requirements. Even so, given his *pro se* status, and in the interest of thoroughness, the Court has made its best attempt at deciphering his claims and considering their merits given the facts he has put forth. In doing so, the Court agrees with Defendant that, under Rule 12(b)(6), Plaintiff has failed to allege any plausible claims for relief.

### A. Discrimination

The Court turns first to Plaintiff's claim for "discrimination." [R. 1-1 (Complaint), p. 3]. Here, the Court observes that it must construe Plaintiff's *pro se* Complaint liberally to even ascertain what type of "discrimination" he attempts to allege. Again, he does not clearly set forth any specific cause of action or recite the elements of his "discrimination" claim. But because he makes reference to his own race and the races of his co-workers at various points in his Complaint, and because there are no facts on which to infer Plaintiff might be asserting anything other than discrimination based on his race, the Court presumes he is alleging race discrimination.[2]

The Kentucky Civil Rights Act (KCRA), KRS 344, makes it unlawful "[t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the

---

[2] Of course, the Court's own difficulty in ascertaining the nature of Plaintiff's claim underscores Defendant's position that Plaintiff's Complaint fails to give adequate notice to Defendant of the claims against it, and further supports dismissal. [R. 14, p. 2].

individual's race[.]" KRS 344.040(l)(a).³ To sustain a race discrimination claim, a plaintiff must allege: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside of his protected class or was treated differently than similarly situated nonprotected employees. *Keys v. Humana*, 684 F.3d 605, 608 (6th Cir. 2012).

Viewing Plaintiff's Complaint in the light most favorable to him, accepting his allegations as true, and drawing all reasonable inferences in his favor, *see Gavitt*, 835 F.3d at 639–40 (citation omitted), Plaintiff still fails to state a plausible claim for race discrimination. First, Plaintiff offers that he is "an African and a Naturalized U.S. Citizen," [R. 1-1 (Complaint), p. 3], which satisfies the requirement that he be a member of a protected class based on his race. As for the second requirement, Plaintiff's Complaint makes no mention of his qualification for the position he held prior to his termination. But even presuming, for purposes of this analysis, that he was qualified for the position he previously held at Collins Aerospace, his claim fails later in the analysis. On the third requirement, it is clear Plaintiff suffered an adverse employment action when his employment was terminated. *See id.* at 7; [R. 14, p. 2]. However, fourth, and most importantly here, Plaintiff has wholly failed to allege that he was either replaced by a person outside of his protected class or was treated less favorably than any similarly situated, nonprotected employee. On this factor, Plaintiff does not allege that he was replaced by a person outside of his protected

---

³ Because Plaintiff originally filed his Complaint in state court, the Court presumes his discrimination claim is brought under Kentucky law. But even if he intended to plead a discrimination claim under federal law, the Court's analysis would not change "[b]ecause the KCRA is modeled on Title VII of the Civil Rights Act of 1964[.]" *Stacy v. Shoney's, Inc.*, 142 F.3d 436, *2 (6th Cir. 1998) (table decision); *see also Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 510 (6th Cir. 2022) (noting relevant portions of KCRA and Title VII are "virtually identical").

class; rather, he attempts to present two different co-workers as comparators who were treated more favorably by Collins Aerospace. As explained below, however, neither is sufficient.

First, and once again construing Plaintiff's Complaint with the utmost liberality, he arguably asserts that another Collins Aerospace employee was not disciplined, and therefore treated more favorably than he was, for a similar infraction "because this coworker was a white male." [R. 1-1 (Complaint), p. 5]; *see also id.* at 6 ("I said that the next time a fellow coworker insults me on the job I will file a grievance to the corporate office and will not come to [my manager] because [the manager] will do nothing if the coworker is white."). However, Plaintiff fails to allege any facts that indicate either (1) that this white co-worker was similarly situated to him in all relevant respects, or (2) that the co-worker engaged in conduct of the same severity as Plaintiff's and was treated less favorably.

"In order to show that a plaintiff is 'similarly situated' to another, the plaintiff is required to prove that all of the relevant aspects of their employment situation were 'nearly identical' to those of the 'similarly situated' employee." *McBrearty v. Kentucky Cmty. & Tech. Coll. Sys.*, 262 S.W.3d 205, 214 (Ky. Ct. App. 2008); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"). "'Superficial similarities between a disciplined employee and his colleagues' are not enough to make them comparators." *Id.* at 511–12 (quoting *Arendale v. City of Memphis*, 519 F.3d 587, 604 (6th Cir. 2008)). "Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated." *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004) (citing *Pierce v. Commonwealth Life Ins.*, 40 F.3d 796, 802 (6th Cir.

1994)).[4] In addition, employees may be similarly situated where they "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Adebisi v. Univ. of Tennessee*, 341 F. App'x 111, 112 (6th Cir. 2009) (internal citation and quotation marks omitted). Here, Plaintiff offers no facts upon which the Court can infer he is similarly situated in all relevant respects to the co-worker who allegedly insulted him.

To be clear, although Plaintiff need not have proven, at the pleading stage, that all relevant aspects of his employment were similar to that of his white co-worker, he must at least offer facts that, if accepted as true, could do so. *See Johnson v. Scotts Co.*, No. 2:11-CV-0020, 2011 WL 6415521, at *3 (S.D. Ohio Dec. 21, 2011) (granting employer's motion to dismiss Title VII race discrimination claim where employee's complaint lacked "any allegations that [employer] either treated similarly-situated Caucasian employees more favorably, or replaced [plaintiff] with a Caucasian employee"); *Booth v. Cnty. Exec.*, 186 F. Supp. 3d 479, 486 (D. Md. 2016) ("Because two coworkers treated differently for the same offense might not be similarly situated if they have different job responsibilities or circumstances, a complaint that merely alleges a co-worker is similarly situated without providing facts to substantiate that similarity fails to state a claim for discrimination."); *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190–91 (4th Cir. 2010), aff'd sub nom., 566 U.S. 30 (2012) (affirming 12(b)(6) dismissal of Title VII race discrimination

---

[4] "Because the KCRA is modeled on Title VII of the Civil Rights Act of 1964, [] federal decisions interpreting the federal act are 'most persuasive, if not controlling, in interpreting the Kentucky statute.'" *Stacy*, 142 F.3d at *2 (table decision) (quoting *White v. Rainbo Baking Co.*, 765 S.W.2d 26, 28 (Ky. Ct. App. 1988)). For this reason, the Court references federal decisions in this analysis.

claim where complaint "conclusorily allege[d] that [plaintiff] was terminated based on his race" but did "not assert facts establishing the plausibility of that allegation," and where the complaint alleged plaintiff "was treated differently as a result of his race than whites" but "fail[ed] to establish a plausible basis for believing [proffered comparators] were actually similarly situated or that race was the true basis for [plaintiff's] termination"); *O'Bard-Honorato v. O'Rourke*, No. CV-179179JGBMAAX, 2019 WL 4451234, at *4 (C.D. Cal. Apr. 24, 2019) (granting motion to dismiss Title VII race discrimination claim where "Plaintiff fail[ed] to plead facts suggesting similarly situated individuals outside of her race were treated more favorably"). Here, Plaintiff has failed to allege any facts that would indicate he and the subject co-worker held similar job titles or similar responsibilities, had a similar level of experience or similar work records, were subject to the same standards, or any facts that could otherwise demonstrate that the co-worker is an apt comparator.

Moreover, and importantly here, in the disciplinary context, "[i]n order to be considered similarly situated, employees must have 'engaged in acts of 'comparable seriousness.'" *Blount*, 55 F.4th at 512 (citation omitted); *see also Haggood v. Rubin & Rothman, LLC*, No. 14-CV-34L SJF AKT, 2014 WL 6473527, at *11 (E.D.N.Y. Nov. 17, 2014) ("At the motion to dismiss stage a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated. . . . Thus, well-pled facts showing that the plaintiff has been treated differently from others similarly situated, remains an essential component of such a claim and conclusory allegations of selective treatment are insufficient."). "The fact that two employees both received a warning or a negative performance review, for example, is not enough to make those employees similarly situated;

instead, the reviews must concern similar work issues." *Blount*, 55 F.4th at 512 (citing *Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454, 458–59 (6th Cir. 2010)).

Here, Plaintiff alleges that his white co-worker was not formally disciplined after he "began raining insults on" Plaintiff when he asked the co-worker to perform a work-related task. [R. 1-1 (Complaint), p. 5]. According to Plaintiff, the co-worker "said that [Plaintiff] was not his f..king boss so [Plaintiff] must never f..king asked [sic] him to take the dirty rugs bin to empty it." *Id.* However, Plaintiff does not recount any specific "insults" the co-worker directed at him (and certainly none based on race); rather, it appears Plaintiff took offense to the co-worker's use of profane language and the fact that other co-workers were present when the alleged verbal altercation occurred. Be it so, this co-worker's behavior as Plaintiff describes it, while perhaps unprofessional, is insufficient to indicate the two engaged in acts of "comparable seriousness," considering Plaintiff's admitted statements to his gay co-worker concerning burning accused gay persons alive in Africa "before the police even arrive." *Id.* at 4. *See Richards v. Dep't of Educ. of City of New York*, No. 21-CV-338 (LJL), 2022 WL 329226, at *11 (S.D.N.Y. Feb. 2, 2022) (dismissing Title VII race and religion discrimination claim where "the Amended Complaint [did] not allege enough facts to show that Plaintiff and [comparator] 'engaged in comparable conduct, that is, conduct of comparable seriousness'" so to "raise a minimal inference of discriminatory motivation based on race or religion"); *Bajestani v. Tennessee Valley Auth.*, 61 F. Supp. 3d 759, 763 (E.D. Tenn. 2014) (dismissing Title VII discrimination claim where plaintiff, who was fired for lying on a financial withdrawal application but positioned "that he was not given a chance to explain his responses and that he was assured no one ever scrutinized" other executives' applications "failed to show that he was treated differently than similarly situated employees"); *see also Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710–11 (6th Cir. 2006) (affirming district

court's grant of summary judgment to employer where employee, who sexually harassed co-worker, was not similarly situated to co-worker who allowed unauthorized person into employer's facility and spread rumors about plaintiff). Although *Wright* evaluated a race discrimination claim at summary judgment, it is instructive on this point.

In *Wright*, the Sixth Circuit explained that the plaintiff "cannot be considered similarly situated [to the alleged comparator] for the purpose of discipline because they engaged in different conduct, and the differences in their conduct are relevant." *Id.* at 710. The Court further noted that an employer "is permitted to consider its legal obligations, especially to a class of people protected by federal and state law that is made vulnerable by a particular employee's alleged misconduct, in its disciplinary decisions regarding its employees." *Id.* Importantly, here, Plaintiff has not alleged that his white co-worker made any remarks related to Plaintiff's protected racial status when the co-worker "began raining insults" on him. [R. 1-1 (Complaint), p. 5]. To be clear, Plaintiff's own account of his altercation with the co-worker mentions no specific "insults," derogatory remarks, or even discriminatory innuendo. *See Wiseman v. Spectrum Healthcare*, No. 2:21-CV-02042-TLP-CGC, 2021 WL 4399718, at *4 (W.D. Tenn. Sept. 27, 2021) (granting motion to dismiss where "Plaintiff did not describe any instances of discrimination, let alone any discrimination related to her race or color"); *Wilson v. CC Holdings Rest. Grp.*, No. 1:19-CV-872, 2020 WL 2734769, at *3 (S.D. Ohio May 26, 2020), report and recommendation adopted, No. 1:19-CV-872, 2020 WL 3577714 (S.D. Ohio July 1, 2020) (granting motion to dismiss race discrimination claim where "complaint fail[ed] to provide any connection between plaintiff's race and his termination"). On the other hand, Plaintiff admits he made inflammatory comments about homosexuality to an openly gay co-worker. [R. 1-1 (Complaint), p. 4]. Thus, accepting the facts as Plaintiff presents them as true, he has not plausibly alleged that he and his co-worker engaged in acts of comparable

seriousness and were treated differently. *See Bajestani*, 61 F. Supp. 3d at 763; *Wright*, 455 F.3d at 710–11. Plaintiff's statements targeted "a class of people protected by federal and state law," i.e., gay persons, and his co-worker's statements did not. *Wright*, 455 F.3d at 710; *see also Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1754 (2020) (recognizing that Title VII protects gay and transgender employees). For all these reasons, Plaintiff has not plausibly alleged that his white co-worker was treated more favorably than he was for conduct of comparable severity.

Second, to the extent Plaintiff attempts, either in his complaint or in his late-filed response, to allege that his gay co-worker, to whom he expressed his beliefs on homosexuality, is also a similarly situated person who was treated more favorably than he was, this argument fails. Specifically, Plaintiff offers, "the black American gay co-worker to whom Plaintiff made the offense [sic] comments, also made offensive comments by stating she thought a co-worker was gay and stating 'people are born gay.'" [R. 17, p. 3]. But, as Plaintiff acknowledges, this co-worker is African American, which puts her in the same protected class as Plaintiff for purposes of his race discrimination claim.[5] Even setting that aside and assuming, for purposes of this analysis, that

---

[5] Although the Court could not locate a Sixth Circuit Court of Appeals decision explicitly stating that a proffered comparator cannot be within the same protected class as the plaintiff to demonstrate race discrimination, the Sixth Circuit has clearly held that a plaintiff must show that he was "replaced by a person *outside the protected class* or treated differently than similarly situated *nonprotected* employees." *Keys*, 684 F.3d at 608 (emphasis added). Moreover, several courts outside the Sixth Circuit have clearly found that, for purposes of race discrimination, a comparator cannot be within the plaintiff's protected class. *See Harris v. Drax Biomass Inc.*, 813 F. App'x 945, 948 (5th Cir. 2020) (finding African American plaintiff had not shown "he was replaced by someone outside of his protected class or was treated less favorably than a similarly situated comparator of another race," as he "was replaced by Frank Shockley, who is African American"); *Ryan v. McAleenan*, No. CV-ELH-19-1968, 2020 WL 1663172, at *19 (D. Md. Apr. 3, 2020) ("[S]everal of the individuals selected by TSA for the SBDO positions are within plaintiff's protected class. Thus, it is simply not plausible to infer that TSA's hiring decisions with respect to the SBDO position were driven by impermissible animus."); *Booth v. Maryland*, 327 F.3d 377, 383 (4th Cir. 2003) (stating that it is "not possible to infer that any disparate discipline against Booth was motivated by racial discrimination because Booth's evidence demonstrated that both white and African-American employees were treated differently than Booth"); *Delos Santos v. Potter*, 371 F. App'x 746, 748 (9th Cir. 2010)

Plaintiff's gay co-worker is an otherwise apt comparator, Plaintiff has again failed to plausibly allege that this co-worker engaged in conduct of similar severity to his own.

Plaintiff explains that, before he expressed his beliefs on homosexuality, the co-worker stated her own belief that another co-worker was gay and explained that individuals are born gay. *Id.*; *see also* [R. 1-1 (Complaint), p. 4]. Plaintiff appears to suggest that this co-worker was allowed to freely express her beliefs while Plaintiff was terminated for doing the same; however, the respective "beliefs" Plaintiff and the co-worker expressed carried different implications. *See Johnson v. Ohio Dept. of Public Safety*, 942 F.3d 329, 331 (6th Cir. 2019) (observing, when considering a district court's summary judgment ruling, that "[w]hen it comes to comparable seriousness, it is the particular conduct of the [employees], not broad generalizations, that counts. Drawn at too high a level of generality, the 'comparable seriousness' test becomes meaningless. True, stitches and open-heart surgery are both medical procedures. But that does not mean they are of 'comparable seriousness'"). Likewise, even at the pleading stage, "broad generalizations" will not suffice to plausibly allege acts of comparable seriousness. *See Bajestani*, 61 F. Supp. 3d at 763 (citation omitted) ("The Sixth Circuit has made clear that while the plaintiff alleging discrimination 'need not present 'detailed factual allegations,' it must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference.'"); *see also Brown v. Goodwill Indus. of E. N. Carolina, Inc.*, 361 F. Supp. 3d 558, 564 (E.D.N.C. 2019) (dismissing race and sex discrimination claims and finding

---

(denying disparate treatment claim under ADEA and Title VII because plaintiff's comparators were members of the same protected class as plaintiff); *Floyd v. U.S. Dep't of Homeland Sec.*, RDB-09-0735, 2009 WL 3614830 (D. Md. Oct. 27, 2009) ("A plaintiff cannot establish a claim of disparate treatment by referencing a comparator of the same protected class.").

plaintiff, who was fired for customer and employee safety violations, did "not plausibly show that [proffered comparator who was investigated for harassment] engaged in similarly serious misconduct . . . [or] that the disciplinary measures taken against him were more severe than those taken against [the comparator]," because plaintiff "fail[ed] to allege the nature of and circumstances surrounding the disciplinary action taken against [the comparator]").

To be clear, Collins Aerospace investigated Plaintiff after his co-worker reported that Plaintiff told her individuals are "sexually molested into being gay" and that "they burn gay [people] alive in Africa." *See* [R. 1-1 (Complaint), p. 6]; *see also* [R. 14, p. 7]. Although Plaintiff claims that is a mischaracterization of his actual statement, the statement, even as clarified by Plaintiff,[6] could be perceived as threatening to a gay person. In contrast, there was nothing threatening about the co-worker's statement to Plaintiff, who is heterosexual, that she believed another co-worker to be gay and that people are born gay. *See Wright*, 455 F.3d at 710–11 (distinguishing employee behavior targeting protected persons as more severe than other types of infractions).

Lastly, with respect to Collins Aerospace's investigation into Plaintiff's comments, Plaintiff also appears to suggest the corporate representative's use of the phrase "you people" was a derogatory reference to his race. [R. 1-1 (Complaint), p. 6]; [R. 17, p. 3]. However, given the context as Plaintiff describes it, there is nothing to indicate a racial animus in the representative's attempt to convey that "people" who make comments like those by Plaintiff make gay individuals uncomfortable at work. *See* [R. 1-1 (Complaint), p. 6] ("I told [the corporate representative] that

---

[6] *See* [R. 1-1 (Complaint), p. 4] ("I said in Africa when . . . a gay person is cought [sic] sexually molesting or having sex with a child, the angry crowd of people will bring that person out into the street and they will burn that person alive before the police even arrive . . . as a deterrence to others[.]").

[the co-worker] and I said lots of things in our conversation and amount [sic] then I told [the co-worker] that in Africa when a rapist or a gay person is caught sexually molesting or having sex with a child, the angry crowd will bring out that person in public and they will burn that person alive, they say they do it as deterrent to others. The man said to me you people are the want [sic] that makes gay workers uncomfortable on the job.").

Accepting Plaintiff's own account of this conversation as true, there are no facts upon which to infer that the corporate representative was referring to Plaintiff's race when he used the generalization "you people." A common-sense interpretation of the representative's statement indicates he was referring to "people" who make the type of insensitive or homophobic comments toward gay persons that plaintiff did here. And the Sixth Circuit has even found, when reviewing a district court's summary judgment order, that the phrase "'you people' does not qualify as a clear reference to race" and "[w]ithout other allegations indicating a racist meaning, this ambiguous comment is not in and of itself racist." *Umani v. Michigan Dep't of Corr.*, 432 F. App'x 453, 459 (6th Cir. 2011); *see also Banks v. Cypress Chase Condo. Ass'n B, Inc.*, 616 F. Supp. 3d 1316, 1321 (S.D. Fla. 2022) (granting 12(b)(6) motion to dismiss race discrimination claim where plaintiff alleged "single allegation about the use of the phrase 'you people'"). Again, at this stage, Plaintiff need not have produced evidence to conclusively establish his race discrimination claim. Plaintiff "must, however, 'allege sufficient 'factual content' from which a court could 'draw the reasonable inference'' of discrimination." *Katib v. USF Holland LLC*, 640 F. Supp. 3d 788, 793 (N.D. Ohio 2022) (citations omitted); *see also Finley v. Miami Univ.*, No. 1:19-CV-984, 2022 WL 293476, at *4 (S.D. Ohio Feb. 1, 2022) ("In the discrimination context, a plaintiff is not required to prove a prima facie case to survive a motion to dismiss. . . . This does not mean, however, that the pleading rules in discrimination cases are any less stringent than pleading standards for other federal causes

of action."). With these standards in mind, accepting Plaintiff's allegations as true and drawing all reasonable inferences in his favor, Plaintiff's Complaint still fails to state a plausible claim for race discrimination.

### B. Wrongful Termination

The Court turns next to Plaintiff's claim for wrongful termination. "Ordinarily, Kentucky allows 'an employer to discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible.'" *Valdivia v. Paducah Ctr. for Health & Rehab., LLC*, 507 F. Supp. 3d 805, 811 (W.D. Ky. 2020) (cleaned up) (quoting *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983)) (add'l citations omitted); *see also Clarke v. Amazon.com*, No. CV 2:23-114-DCR, 2023 WL 7003220, at *2 (E.D. Ky. Oct. 24, 2023). "But to that general rule, Kentucky recognizes a limited exception for terminations against public policy." *Valdivia*, 507 F. Supp. 3d at 811 (citations omitted). Still, "[w]hile there is a narrow public policy exception to this 'terminable-at-will' doctrine, Kentucky courts have recognized that 'employers as a group have a legitimate interest to protect' which requires that 'the cause of action for wrongful discharge be clearly defined and suitably controlled.'" *Alexander v. Eagle Mfg. Co., LLC*, No. CV 15-127-DLB-JGW, 2016 WL 5420573, at *2 (E.D. Ky. Sept. 27, 2016), aff'd, 714 F. App'x 504 (6th Cir. 2017) (cleaned up) (citation omitted).

Thus, the elements of a common law wrongful termination claim are:

1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law. 2) That policy must be evidenced by a constitutional or statutory provision. 3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

*Cope v. Gateway Area Dev. Dist., Inc.*, 624 F. App'x 398, 403 (6th Cir. 2015) (quoting *Foster v. Jennie Stuart Med. Ctr., Inc.*, 435 S.W.3d 629, 635 (Ky. Ct. App. 2013)). "Under the first constraint, Kentucky courts only recognize three circumstances in which a discharge is actionable under the public policy exception," and they are: "(1) when there are explicit legislative statements prohibiting the discharge; (2) when the alleged reason for the discharge was the employee's failure or refusal to violate a law in the course of employment; or (3) when the reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment." *Clarke*, 2023 WL 7003220, at *2 (citing *Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 422 (Ky. 2010)). "In addition to satisfying one of those conditions, the public policy being invoked must have 'an employment-related nexus.'" *Id.* (citing *Grzyb v. Evans*, 700 S.W.2d 399, 402 (Ky. 1985)).

In its motion to dismiss, Defendant contends, "Because Plaintiff's Complaint does not allege or allude that Plaintiff was discharged for exercising a right conferred by a legislative enactment or for refusing to violate a statutory or constitutional provision, his Complaint fails to state a claim for common law wrongful termination." [R. 14, p. 6]. Indeed, there are no facts in Plaintiff's Complaint upon which the Court could infer his termination is actionable under any public policy exception. *See generally* [R. 1-1, pp. 3–7]. To the extent he alleges his termination was racially motivated, his wrongful termination claim on the same grounds would be preempted by the Kentucky Civil Rights Act. *See Sparks v. Fid. Corp. Real Est., Inc.*, No. CV 16-25-DLB-JGW, 2016 WL 4069275, at *4 (E.D. Ky. July 28, 2016) (dismissing wrongful termination claim based on religious beliefs because "KCRA declare[d] the alleged conduct unlawful and specifie[d] the civil remedies available for such violations"). "Preemption occurs in wrongful discharge cases 'when the statutes that establish the 'well-defined public policy' violation which supports the

wrongful discharge pleading are the same statutes that establish a statutory cause of action for, and structure the remedy for, violations of that public policy." *Spangler v. E. Kentucky Power Coop., Inc.*, No. CV-5:18-556-DCR, 2018 WL 6424693, at *2 (E.D. Ky. Dec. 6, 2018), aff'd, 790 F. App'x 719 (6th Cir. 2019) (citation omitted). In other words, "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). Plaintiff's wrongful discharge claim based on race discrimination is preempted by the KCRA. As outlined above, Plaintiff has not offered sufficient factual matter to support a race discrimination claim under the KCRA. *See supra* Section III(A).

## IV. CONCLUSION

Based on the foregoing, the Court finds that Plaintiff has failed to state any plausible claims for relief, and his Complaint must therefore be dismissed under Rule 12(b)(6). Accordingly, the Court will grant Defendant's Motion to Dismiss and Deny Plaintiff's Motion for Court to Proceed with Case as moot.

**IT IS THEREFORE ORDERED** as follows:

1. Defendant's Motion to Dismiss [**R. 14**] is **GRANTED**.

2. Plaintiff's Motion for Court to Proceed with Case [**R. 15**] is **DENIED as moot**.

3. A separate Judgment shall issue.

This the 2nd day of January, 2024.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

Cc: Counsel of record